UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>MI OK SONG BRUINING,<br>Defendant. | Cr. No.: 1:23-CR- 49MSM<br><br>Violation:<br>18 U.S.C. § 1349 (Conspiracy) |

## INFORMATION

The United States Attorney charges that:

## COUNT ONE

(Conspiracy to Commit Heath Care Fraud – 18 U.S.C. § 1349)

### Introduction

At all times relevant to this Information, unless herein stated:

1. Defendant MI OK SONG BRUINING ("BRUINING") was an independent clinical social worker and has been licensed by the state of Rhode Island as such since April 26, 2018. Her license is currently active. BRUINING was enrolled in Medicare and reassigned her Medicare payments to RCCA while she worked at RCCA.

2. Recovery Connection Centers of America, Inc. ("RCCA") was a company registered with the Rhode Island Secretary of State as a medical office with a principal place of business in Providence, Rhode Island. RCCA had multiple locations in Rhode Island and Massachusetts.

3. RCCA was operating as an office-based opioid treatment program, or "OBOT" to provide treatment for opioid addiction (which does not include methadone administration). RCCA's primary location was 381 Wickenden Street, Providence, RI (the "Providence

location"). It had additional locations throughout Rhode Island and Massachusetts, including an office at 7 Main Street, Suite 200, Attleboro, MA (the "Attleboro location").

4. RCCA had been enrolled in Medicare since April 16, 2018. The company was assigned provider numbers for locations in Massachusetts and Rhode Island, respectively. RCCA used its NPI and tax identification number ("TIN") to identify the business as the billing entity when submitting claims for payment. RCCA's NPI number had been assigned to RCCA since April 24, 2018 and was associated with RCCA locations in Rhode Island and Massachusetts. RCCA used its TIN to identify this business as the billing entity for the providers rendering services at RCCA.

5. Co-conspirator M.B. ("M.B.") was the de facto owner and Chief Operating Officer of RCCA. He was not licensed as a health care provider in Rhode Island or Massachusetts.

## Medicare and Medicaid

6. The Medicare program ("Medicare") is a federal health care program providing benefits to persons who are over the age of 65 or disabled. The United States Department of Health and Human Services ("HHS"), through its agency the Centers for Medicare and Medicaid Services ("CMS"), administers Medicare. Medicare is a "health care benefit program" as defined by 18 U.S.C. § 24(b).

7. To enroll in Medicare, all providers are required to submit a Medicare enrollment application to CMS. In submitting the Medicare application, health care providers certify that they understand and will abide by the federal laws and regulations governing their participation in Medicare. This is true whether the application is for an individual or a business. When Medicare approves a provider's application, Medicare issues the provider a unique provider

number that is associated with the provider's individual National Provider Identifier ("NPI") number. Upon enrollment, Medicare relies on the provider's assigned number or his/her NPI to identify the rendering provider of the service in claims submitted for payment, as well as a unique provider number or NPI of the entity under which the rendered service has been provided.

8. CMS contracts with SafeGuard Services, LLC ("SGS") to perform all of the enrollment activities for providers in Massachusetts and with National Government Services ("NGS") for enrollment activities in Rhode Island.

9. A Medicare provider is able to electronically file claims with Medicare to obtain reimbursement for services provided to beneficiaries. A Medicare claim is required to set forth, among other things, the beneficiary's name and Health Insurance Claim Number, the services that were performed for the beneficiary, the date the services were provided, any applicable codes that modify or add additional information about the services (known as "modifiers"), the name and identification number of the health care provider who rendered the services and the name and identification number of the entity that billed for the service provided. Each time a provider or entity submits a claim to Medicare, the provider/entity certifies that the claim is true, correct, complete, and complies with all Medicare laws and regulations. Most claims are submitted electronically.

10. CMS has the authority to award contracts to private entities to administer the Medicare program. This program, which is known as a Medicare Advantage Plan or Medicare Part C, follows the same rules and regulations as a traditional Medicare plan. In some instances, the private entity offers additional coverage, but the most significant difference is that the Medicare Advantage Plan is administered directly by a private entity, not CMS. In exchange for

administering Medicare, CMS pays a fixed amount to the private company that offers the Medicare Advantage Plan.

11. The Medicaid program ("Medicaid") is a federal and state funded health care program providing benefits to low-income persons. As is the case with Medicare, HHS – through CMS - administers Medicaid in conjunction with the states. Medicaid is a "health care benefit program" as defined by 18 U.S.C. § 24(b).

12. The Rhode Island Executive Office of Health and Human Services ("RI EOHHS") operates and administers the Medicaid program, also referred to as "Medical Assistance" in Rhode Island. Since at least 2019, approximately 90% of the Rhode Island Medicaid population is enrolled in Medicaid through a Medicaid Managed Care plan. Like Medicare Managed Care plans, Medicaid Managed Care plans are administered by several private entities in Rhode Island, including Neighborhood Health Plan of Rhode Island, United Healthcare, Tufts Health Plan and Harvard Pilgrim Health Care (the last two now together Point32Health).

**How Providers Bill Medicare and Other Payors: CPT and HCPCS Codes and Modifiers**

13. In order to bill health care benefit programs such as Medicare, providers use a five-digit number, known as a Current Procedural Terminology ("CPT") code, that identifies the nature and complexity of the service provided. The CPT codes are listed in the CPT manual, which is published annually by the American Medical Association ("AMA"). CPT codes are universally used by health care providers to bill government and private health insurance programs for services rendered. Similarly, Healthcare Common Procedure Coding System ("HCPCS") codes are standard codes that represent medical procedures, supplies, products and services and are represented by a letter followed by four numeric digits. Virtually every

medical procedure has its own CPT or HCPCS code and insurance companies pay a specified amount of money for each CPT code billed.

14. In some instances, providers render a service that is slightly different from the CPT or HCPCS code that represents that particular service. In these instances, providers submit a claim with a modifier, which is a two-digit code (represented by numbers and/or letters) that indicates a service billed with that CPT or HCPCS code that has been altered in some way, but still fits the definition of that code. For example, a provider can include the modifier "59" with a CPT code for 45 minutes of psychotherapy, which indicates that the service was a distinct service provided in association with another billed service that are not normally billed together.

15. Typically, providers submit CPT and HCPCS codes and modifiers using a claim form known as a CMS 1500. The CMS 1500 form, completed by the provider or their billing contractor, includes, among other information, the name and provider number of the provider who rendered the service; the name of the patient who received the service; the date the service was performed; a code identifying where the service was provided; the procedure that was rendered (identified by the CPT or HCPCS code); any necessary modifiers; and the diagnosis of the patient's condition for which the service was rendered. Most providers, including RCCA, submit claims to Medicare and other health care benefit programs electronically.

16. When a provider submits a claim, the provider certifies that the services identified on the form were actually provided by a qualified provider, medically indicated and necessary for the health of the patient. In addition, when a provider becomes a participating provider in Medicare and signs the Participating Provider Agreement, that provider agrees to accept assignment of all Medicare benefits for all covered services for all Medicare beneficiaries.

### CPT Code 90834:   Psychotherapy for 45 minutes.

17. The AMA defines Code 90834 as the provision of psychotherapy for 45 minutes with a patient.  Moreover, Article #A52825, Billing and Coding Psychiatry and Psychology Services, originally published by NGS on November 28, 2019, provides specific coding guidelines for all psychiatric diagnostic procedures, including code 90834.  This Article states, in part, "Procedure codes 90832-90838 (psychotherapy for 30-60 minutes) – report the code closest to the actual time (i.e., 16-37 minutes for 90832 and 90833, 38-52 minutes for 90834 and 90836, and 53 or more minutes for 90837 and 90838)."  Thus, RCCA could appropriately use code 90834 only for visits lasting between 38-52 minutes.

18. CPT codes 90832 and 90833 are available for providers who see patients for less than 45 minutes.  Between January 2018 and February 2023, neither of these codes was ever billed by RCCA for psychotherapy services.

19. NGS guidance also notifies providers of additional requirements for the provision of any psychotherapy services, including that the duration of a course of psychotherapy must be individualized for each patient, and that the medical record should document the patient's symptoms, goals of therapy and methods to monitor the patient's outcome. Finally, the guidance requires that providers document the time spent in the encounter and include an updated treatment plan in the medical record.

### The Conspiracy

20. From in or about April 2018 through in or about August 2022, in the District of Rhode Island, and elsewhere, the defendant,

**MI OK SONG BRUNING,**

together with M.B., RCCA and others known and unknown to the United States Attorney, did knowingly and willfully combine, conspire, and agree, to violate Title 18, United States Code, Section 1349, that is, to execute and attempt to execute a scheme and artifice to defraud health care benefit programs affecting interstate commerce, as defined by Title 18, United States Code, Section 24(b), that is Medicare, Rhode Island Medicaid, Point32Health (formerly Tufts Health Plan and Harvard Pilgrim Health Plan), Neighborhood Health Plan of Rhode Island, Mass Health, Blue Cross Blue Shield of Rhode Island, Blue Cross Blue Shield of Massachusetts, United Healthcare and others and to obtain, by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by, and under the custody and control of, said health care benefit programs, in connection with the delivery of any payment for health care benefits, items and services.

## The Objects of the Conspiracy

21.     It was the object of the conspiracy for the defendants to unlawfully enrich themselves by obtaining money and other things of value by submitting and causing the submission of false and fraudulent claims to Medicare, Medicaid and other health care payors.

## Manner and Means of the Conspiracy

22.     It was part of the conspiracy that the co-conspirators caused false and fraudulent claims to be submitted for psychotherapy and counseling services that did not occur for the length of time billed to be submitted to Medicare and Medicaid, and other insurers.

23.     It was further part of the conspiracy that on many occasions, BRUINING, M.B., RCCA, and others known and unknown to the United States Attorney caused RCCA to submit false and fraudulent claims to Medicare, Medicaid and other insurers seeking and obtaining reimbursement for counseling sessions lasting on average 45 minutes, which claims totaled more

hours of service in one day than it is possible for the counselors to have completed in a 24-hour period, even though the facility was only providing services approximately 4-6 hours per day. These fraudulent claims resulted in more than $3.5 million in fraudulent reimbursements to RCCA

24. It was further part of the conspiracy that RCCA consistently billed for far more patients seen in the Providence location during office hours than is possible. For example, on Thursdays, the maximum number of patients that could be seen for 45 minutes of counseling between the available hours at RCCA of 11 a.m. and 7 p.m. is 11. On many Thursdays during the conspiracy, RCCA billed for significantly more than 11 patients having received 45 minutes of counseling.

25. It was further part of the conspiracy that BRUINING trained the counselors to see patients for no more than 5-10 minutes despite knowing that RCCA was billing all the counseling sessions as 45 minutes or more.

26. It was further part of the conspiracy that BRUINING directed counselors and others at RCCA to record in their notes that they were providing counseling in 45-minute intervals, but without listing am or pm for the start time.

27. It was further part of the conspiracy that BRUINING booked patients for counseling at a pace that would not allow counselors to see patients for more than a few minutes and training counselors to see patients as quickly as possible, for as few as 3-10 minutes.

28. It was further part of the conspiracy that BRUINING instructed RCCA counselors when they were hired that they must document client counseling sessions for 45 minutes regardless of time spent.

29. It was further part of the conspiracy that BRUINING herself sometimes only brought the patient into her office to ask if they had used illicit drugs but would then tell them they could leave once the question was answered, regardless of the answer.

30. It was further part of the conspiracy that BRUINING usually only checked with the patients briefly to see if they relapsed and if the patient seemed in good health, then the counseling appointment would be short, which BRUINING referred to as a "drive by." Some patients did not even sit down because the counseling sessions were so brief. BRUINING also bragged to the other RCCA counselors and staff about seeing so many patients in one day and about how productive she was. She was known around the office as the "5 Minute Queen" for her speed in seeing patients for so-called counseling sessions.

31. It was further part of the conspiracy that BRUINING also instructed the counselors not to record whether the start time for their visit was a.m. or p.m. so that it was not clear that they were seeing more patients than possible within a single hour. She also instructed other counselors to copy and paste the last visit's note into each entry to make the bill look complete. Many of the patient notes for patients billed by RCCA are simply identical cut-and paste copies of the same note.

32. It was further part of the conspiracy that in its billings to Medicare and various private payors for the period of on or about January 1, 2018 to on or about February 14, 2023, RCCA fraudulently billed CPT code 90834, which is psychotherapy for 45 minutes with the patient, more than 53,000 times since January 2018.[1] As shown in the chart below, almost all

---

[1] RCCA has also billed CPT code 90837, which is for the provision of psychotherapy for 60 minutes with a patient. However, this code was billed 182 times by RCCA between January 2018 and February 2023.

therapy sessions billed were billed using CPT code 90834, indicating an average of 45 minutes and no less than 38 minutes of therapy rendered to the individual patients, despite the fact that therapy was not being provided for more than fifteen minutes.

| **All Payors Billed by Recovery Connection 1/1/2018 to 2/14/2023** | | |
|---|---|---|
| **CPT Code** | **Count of Quantity Allowed** | **Sum of Amount Paid** |
| 90834 (45 min) | 53,374 | $3,554,046.63 |
| 90836 (45 min w/ E&M code)[2] | 2 | $113.05 |
| 90837 (60 min) | 182 | $16,377.36 |
| **Grand Total** | **53,558** | **$3,570,537.04** |

### Acts in Furtherance

33. On or about July 24, 2019, an employee of RCCA, acting at the direction of BRUINING, entered notes into Practice Fusion for 39 different patients. All of the notes read: "Objective: Client will actively participate in relapse prevention, NA/AA meetings, finding a sponsor and a home group, as well as learn how to communicate effectively with family members and relatives, in addition to learning about stress reduction, productive activities, taking responsibilities and being accountable for all actions and actively working one's recovery."

34. On or about June 25, 2020, despite having only one counselor on duty that day, RCCA billed for 38 different patients, all for 45 minutes of counseling, totaling 1,710 minutes, or 28.5 hours in one day, which is impossible.

---

[2] CPT code 90836 is for 45 minutes of counseling in conjunction with an Evaluation and Management ("E&M") code. This code would be billed when counseling is provided during the same visit as medical management of non-psychotherapy related issues.

35. On or about November 8-9, 2019, BRUINING engaged in an email exchange with M.B. and a then RCCA staff person, in which BRUINING and co-conspirator M.B. directed an RCCA staff person to continue to see patients for only about 15 minutes as scheduled, even though they were billing the counselling sessions as if they had lasted 45 minutes.

36. In or March 20, 2020, in a response to an inquiry from dated March 20, 2020, from Blue Cross Blue Shield of Rhode Island ("BCBSRI"), co-conspirator M.B. falsely stated that the counseling sessions at RCCA routinely lasted at least 45 minutes.

37. In or about 2020, when RCCA was being audited by an insurance company, and the auditors requested counseling notes for various patients, BRUINING, pursuant to instructions from M.B., changed the patient counseling note to falsely reflect that the patient was seen for 45 minutes so that the medical record matched what was billed to the insurer, despite the fact that no patients at RCCA were seen for 45 minutes.  To do this, BRUINING created a copy of her counseling notes that were separate from those in Practice Fusion, the electronic health record system used by RCCA, and added the end time to each note that was being provided to the insurer.  In other words, if a patient's record already had a start time of 9am, BRUINING edited the record to reflect that the patient was seen by a counselor from 9:00-9:45am. These edited records were then printed by BRUINING and sent to the insurer. BRUINING then deleted her copy of the edited records.

All in violation of 18 U.S.C. § 1349.

ZACHARY A. CUNHA
United States Attorney

*/s/ Sara Bloom*

KEVIN LOVE HUBBARD
SARA MIRON BLOOM
Assistant U.S. Attorneys

*/s/ Lee Vilker*                                             Date:   6/6/2023

LEE H. VILKER
Assistant U.S. Attorney
Criminal Division Deputy Chief